**FILED**

**Nov 22, 2022**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

**2:22-cv-2107-DB (PC)**

NICHOLAS FLORES # AV- 2008
(Name of Plaintiff)

(Case Number)

P.O. BOX 32110
(Address of Plaintiff)

STOCKTON, CALIFORNIA 95213

COMPLAINT

vs.

G. HERRERA

M. CALAHAN

(Names of Defendants)

I  Previous Lawsuits:

    A.  Have you brought any other lawsuits while a prisoner: ☑ Yes    ☐ No

    B.  If your answer to A is yes, how many?: _____1_____ Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

        1. Parties to this previous lawsuit:

            Plaintiff NICHOLAS D. FLORES # AV- 2008

            Defendants JOHNSON, et. AL.

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

Rev'd 5/99

2. Court (if Federal Court, give name of District: if State Court, give name of County)

EASTERN DISTRICT

3. Docket Number 2:19-CV-00314-JAM-DMC

4. Name of judge to whom case was assigned CAROLYN K. DELANEY

5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)
SETTLEMENT

6. Approximate date of filing lawsuit FEBRUARY 2019

7. Approximate date of disposition JUNE 16, 2019

II. Exhaustion of Administrative Remedies

A. Is there a grievance procedure available at your institution?   ☑ Yes    ☐ No

B. Have you filed a grievance concerning the facts relating to this complaint?
☑ Yes    ☐ No

If your answer is no, explain why not _____

_____

C. Is the grievance process completed?    ☑ Yes    ☐ No

III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

A. Defendant G.HERREA _____ is employed as CSP-SAC _____
_____ at REPRESA CALIFORNIA _____

B. Additional defendants M. CALAHAN _____
_____
_____
_____
_____
_____
_____

IV.     Statement of Claim

(State here as briefly as possible the <u>facts</u> of your case.  Describe how each defendant is involved, including dates and places.  Do not give any legal arguments or cite any cases or statutes.  Attach extra sheets if necessary.)

<u>SEE ATTACHED COMPLAINT</u>

V.  Relief.

(State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.)

<u>SEE ATTACHED COMPLAINT AND PRAYER FOR RELIEF</u>

Signed this ___20TH___ day of ___NOVEMBER_____, 20_22_____.

_____
Nicholas D. Flores
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

NOVEMBER 20TH, 2022                          _____
(Date)                                      Nicholas D. Flores
                                            (Signature of Plaintiff)

1                         IN THE UNITED STATES DISTRICT COURT

2                        FOR THE EASTERN DISTRICT OF CALIFORNIA

3

4    NICHOLAS FLORES,                      CASE No.

5              PLAINTIFF

6    Vs.                                   COMPLAINT

7    G. HERRERA et. al.,                   42 U.S.C. SECTION 1983

8          DEFENDANT(S)

9                              CLAIMS

10

11     1.    PLAINTIFF CONTENDS THAT EMPLOYEE(S) AT CALIFORNIA STATE PRISON FOLSOM  (CSP-SAC) KNOWINGLY AND WITH A CULPABLE

12   STATE OF MIND ACTED WITH DELIBERATE INDIFFERENCE TOWARDS PLAINTIFF'S SERIOUS MEDICAL AND MENTAL HEALTH NEEDS WHILE ACTIVELY SUICIDAL IN

13   VIOLATION OF PLAINTIFFS EIGHTH AMENDMENT RIGHTS.

14

15     2.    PLAINTIFF CONTENDS THAT EMPLOYEE(S) AT CSP-SAC KNOWINGLY AND WITH A CAPABLE STATE OF MIND ACTED WITH DELIBERATE

16   INDIFFERENCE TOWARDS PLAINTIFF'S SERIOUS MEDICAL AND MENTAL HEALTH NEEDS IN THEIR REFUSAL TO ACT OR RENDER AID AS PLAINTIFF WAS

17   ACTIVELY ATTEMPTING TO COMMIT SUICIDE IN VIOLATION OF PLAINTIFFS EIGHTH AMENDMENT RIGHTS.

18

19     3.    PLAINTIFF CONTENDS THAT EMPLOYEE(S) AT CSP-SAC KNOWINGLY AND WITH A CULPABLE STATE OF MIND ACTED WITH DELIBERATE

20   INDIFFERENCE AND INTENTIONALLY WITHHELD MEDICAL AND MENTAL HEALTH SERVICES AFTER PLAINTIFF SUSTAINED SEVERE ROPE BURNS AND

21   CONTUSIONS ON HIS FOREHEAD AFTER AN UNSUCCESSFUL SUICIDE ATTEMPT IN VIOLATION OF PLAINTIFFS EIGHTH AMENDMENT RIGHTS.

22

23     4.    PLAINTIFF CONTENDS THAT HE SUSTAINED ROPE BURNS, CONTUSIONS TO HIS FOREHEAD, PERMANENT SCARING AT THE

24   CIRCUMFERENCE OF HIS NECK, PSYCHOLOGICAL, AND EMOTIONAL DISTRESS IN VIOLATION OF PLAINTIFFS EIGHTH AMENDMENT RIGHTS.

25

26     5.    PLAINTIFF CONTENDS THAT HIS CLAIMS ARE COGNIZABLE CONSTITUTIONAL VIOLATIONS AND  DEFENDANT(S) ARE LIABLE FOR THEIR

27   DELIBERATE INDIFFERENCE.

28

                                         1

STATEMENT OF FACTS

6.  ON JANUARY 08, 2020 PLAINTIFF WAS INCARCERATED AT CSP-SAC AND ASSIGNED TO THE LONG TERM RESTRICTED HOUSING (LTRH) UNIT FOR INMATE(S) ENROLLED IN THE MENTAL HEALTH SERVICES DELIVERY SYSTEM (MHSDS) AT THE CORRECTIONAL CLINICAL CASE MANAGEMENT SERVICES (CCCMS) LEVEL OF CARE.

7.  EVERY (LTRH) UNIT WITHIN THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR) IS EQUIPPED WITH THE GUARD ONE PIKE TRACKER SYSTEM TO DETECT, PREVENT, AND RESPOND TO SUICIDAL OR SELF-INJURIOUS BEHAVIOR BY INMATE(S). THE SYSTEM REQUIRES CORRECTIONAL OFFICER'S TO CONDUCT A VISUAL ASSESSMENT OF EACH INMATE. ONCE A VISUAL INSPECTION OF THE INMATE HAS BEEN PERFORMED WITH NO VISIBLE SIGNS OF SELF-HARM OR SUICIDE, THE OFFICER WILL PIKE THE DOOR TO DIGITALLY RECORD THAT AN ALL CLEAR VISUAL ASSESSMENT SAFETY CHECK WAS PERFORMED. THE PROCESS IS REPEATED FOR EACH INMATE WHETHER SINGLED OR DOUBLED CELLED. NO MORE THAN THIRTY-FIVE MINUTES CAN ELAPSE BETWEEN VISUAL ASSESSMENTS ON EACH RESPECTIVE INMATE, ITS A CONTINUOUS PROCESS TWENTY-FOUR HOURS A DAY WITH NO EXCEPTIONS. IN THE EVENT THAT AN INMATE OBSTRUCTS THE VIEW INTO THEIR ASSIGNED CELL BY COVERING THEIR WINDOWS AND VISUAL CONTACT CANNOT BE ACHIEVED, THE OFFICER CONDUCTING GUARD ONE SAFETY CHECKS CANNOT PIKE THE DOOR UNTIL A VISUAL ASSESSMENT IS ACHIEVED. ALL EFFORTS WILL BE EXHAUSTED UNTIL VISUAL CONTACT IS MET, INCLUDING AN EMERGENCY CELL BREACH BY STAFF IF NECESSARY. THE OFFICER PERFORMING GUARD ONE SAFETY CHECKS CANNOT CONTINUE TO THE NEXT CELL UNTIL A STAFF MEMBER IS SUMMONED TO REMAIN PRESENT AT THE DOOR OF THE INMATE WHOM HAS COVERED THEIR WINDOWS. A STAFF MEMBER MUST REMAIN PRESENT AT ALL TIMES AT THE INMATE(S) DOOR UNTIL VISUAL OBSERVATION IS ACHIEVED.

8.  ON JANUARY 08, 2020 AT 10:39 A.M. PLAINTIFF INFORMED CORRECTIONAL OFFICER G. HERRERA THAT PLAINTIFF WAS SUICIDAL, HAD DEVISED A PLAN THAT PLAINTIFF WOULD CARRY-OUT TO HANG HIMSELF. OFFICER G. HERRERA'S DIRECT REPLY TO PLAINTIFF WAS: "STOP TELLING ME AND KILL YOURSELF ALREADY, I DON'T CARE". THUS, FUELING PLAINTIFF'S SUICIALITY AND EXACERBATING HIS SENSE OF NO SELF-WORTH BY ENDORSING SUICIDE. PLAINTIFF TOOK HEED TO HERRERA'S ENDORSEMENT, COVERED ALL HIS WINDOWS WITH CARDBOARD WHICH IS REFERED TO AS "BOARDING-UP" IN PRISON TERMINOLOGY. ON ONE PIECE OF CARDBOARD PLAINTIFF INSCRIBED IN CLEAR BOLD LETTERS, "I'M SUICIDAL". PLAINTIFF FASTENED A NOOSE TO CARRY-OUT HIS SUICIDE PLAN BEING ENDORSED BY OFFICER G. HERRERA.

9.  ON JANUARY 08, 2020 AS PLAINTIFF PROCEEDED TO COMMIT SUICIDE OFFICER M. CALAHAN WAS PERFORMING GUARD ONE SAFETY CHECKS. PLAINTIFF WAS UNRESPONSIVE WITH ALL HIS WINDOWS COVERED WITH A SIGN INSCRIBED WITH THE WORDS "I'M SUICIDAL" IN

1  LEGIBLE BOLD LETTERS, SOMETHING THAT WAS IMPOSSIBLE FOR OFFICER M. CALAHAN TO MISS OR IGNORE. IN VIOLATION OF GUARD ONE SUICIDE

2  PREVENTATIVE MEASURES AT 11:09 A.M. M. CALAHAN PIKED PLAINTIFFS DOOR TO DIGITALLY RECORD THAT A VISUAL ASSESSMENT OF PLAINTIFF

3  WAS PERFORMED WITH NO OBVIOUS SIGNS OF SUICIDAL OR SELF-INJURIOUS BEHAVIOR WHEN PLAINTIFF WAS IN FACT ATTEMPTING TO COMMIT

4  SUICIDE. M. CALAHAN CONTINUED TO PIKE PLAINTIFFS DOOR UNDER THESE CIRCUMSTANCES, THUS, ALLOWING PLAINTIFF TO CARRYOUT HIS

5  SUICIDE PLAN.

6

7      10.    THE LTRH UNIT AT CSP-SAC IS A CAMERA FACILITY. THE JANUARY 08, 2020 VIDEO FOOTAGE WILL DEPICT PLAINTIFFS

8  VERSION OF THE FACTS. AT NO POINT ON JANUARY 08, 2020 DID OFFICER'S G. HERRERA AND M. CALAHAN ATTEMPT TO INTERVENE, ACTIVATE

9  THEIR ALARM DEVICE, SUMMON MENTAL HEALTH PROFESSIONALS, NOR REMAINED CONSTANTLY PRESENT AT PLAINTIFFS DOOR AFTER EXPRESSING

10  AN INTENT AND PLAN TO COMMIT SUICIDE TO OFFICER G. HERRERA AND PLACING A SIGN ON HIS WINDOW WHICH READ "I'M SUICIDAL" THAT WAS

11  CLEARLY VISIBLE TO M. CALAHAN. THE APPEAL INQUIRY DETERMINED THAT G. HERRERA AND M. CALAHAN VIOLATED DEPARTMENT POLICY, SEE

12  SECOND LEVEL RESPONSE, EX. A-D01; A-D02. PLAINTIFF CONTENDS THAT THESE VIOLATIONS RISE TO CONSTITUTIONAL VIOLATIONS. PLAINTIFF WAS

13  UNSUCCESSFUL IN HIS SUICIDE ATTEMPT BUT SUSTAINED CONTUSIONS TO HIS FOREHEAD, SEVERE ROPE BURNS, PERMANENT SCARING AT THE

14  CIRCUMFERENCE OF HIS NECK, PSYCHOLOGICAL, AND EMOTIONAL DAMAGES. PLAINTIFF DID NOT HAVE TO SUCCEED IN HIS SUICIDE ATTEMPT FOR G.

15  HERRERA AND M. CALAHAN TO BE LIABLE UNDER CONSTITUTIONALLY PROTECTED RIGHTS AND DENIAL OF MEDICAL AND MENTAL HEALTH SERVICES.

16

17      11.    INMATE DURRELL PUCKETT CDC # G-05549 CAN ATTEST TO PLAINTIFFS ACCOUNT. SEE DECL. D. PUCKETT, EX. B-003. CSP-SAC

18  EMPLOYEE(S) ARE NO STRANGERS TO CORRUPTION OR COVER UPS, SEE FEB. 2022 ARTICLE PLN, EX. C-004; C-005.

19                                    ARGUMENT 1

20          DELIBERATE INDIFFERENCE TO INMATE HEALTH AND SAFETY IS A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT

21

22  THE PROTECTIONS OF THE EIGHTH AMENDMENT FOR WILLFUL INDIFFERENCE TO HEALTH AND SAFETY OF INMATES IS A CLEARLY ESTABLISHED

23  CONSTITUTIONAL RIGHT; FARMER Vs. BRENNAN, 511 U.S. 825, 832, 837, 114 S.CT. 1970 128 L.Ed. 811 (1994); SEE ALSO:

24  ESTELLE Vs. GAMBLE, 429 U.S. 97 104 (1976). "THE EIGHTH AMENDMENT PROTECTIONS AFFORDS PRISONERS A CONSTITUTIONAL STANDARD OF

25  ADEQUATE MEDICAL AND MENTAL HEALTH CARE", COLEMAN Vs. WILSON, 912 F. SUPP. 1282 (E.D. CAL 1995). "THE DELIBERATE INDIFFERENCE

26  STANDARD APPLIES IN CASES INVOLVING THE ADEQUACY OF MENTAL HEALTH CARE IN PRISON, TO ESTABLISH UNCONSTITUTIONAL TREATMENT OF A

27  MENTAL HEALTH CONDITION, A PRISONER MUST SHOW DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED", DOTY Vs. COUNTY OF LASSEN, 37 F. 3d.

28  540, 546 (9th CIR 1994). "JUST AS A SERIOUS MEDICAL NEED MAY EXIST FOR A PHYSICAL CONDITION, SO MAY A SERIOUS NEED EXIST FOR A

1  PSYCHOLOGICAL OR PSYCHIATRIC TREATMENT", DOMINO Vs. TEXAS DEPT. OF CRIM. JUSTICE, 239 F. 3d. 752 (5ᵀᴴ CIR. 2001).

2

3  ON JANUARY 08, 2020 PLAINTIFF WAS HOUSED IN A MENTAL HEALTH UNIT SPECIFICALLY STRUCTURED AND EQUIPPED WITH THE RESOURCES TO

4  ADEQUATELY ADDRESS AND TREAT PLAINTIFF'S SERIOUS MENTAL HEALTH NEEDS. OFFICERS G. HERRERA AND M. CALAHAN INTENTIONALLY DEPRIVED

5  PLAINTIFF OF THESE CONSTITUTIONALLY GUARANTEED MENTAL HEALTH RESOURCES AND SERVICES. PLAINTIFF TOLD G. HERRERA OF AN INTENT TO

6  COMMIT SUICIDE WITH A PLAN DEVISED TO ACCOMPLISH THAT OBJECTIVE. G. HERRERA ENDORSED THAT GOAL AND SADISTICALLY RETORTED WITH

7  "STOP TELLING ME AND KILL YOURSELF, I DON'T CARE", DECL. D. PUCKETT, EX. B-003.   M. CALAHAN WAS EQUALLY INDIFFERENT AND CONTINUED

8  TO PIKE PLAINTIFFS DOOR DURING GUARD ONE SAFETY CHECKS AS PLAINTIFF WAS ACTIVELY ATTEMPTING TO COMMIT SUICIDE WITH ALL HIS WINDOWS

9  COVERED AND A SIGN ON HIS WINDOW THAT READ "I'm SUICIDAL". "TO STATE A VIABLE EIGHTH AMENDMENT CLAIM OF DELIBERATE

10 INDIFFERENCE TO HEALTH AND SAFETY, PRISON OFFICIALS MUST HAVE KNOWLEDGE OF AND DISREGARD AN EXCESSIVE RISK TO INMATE HEALTH AND

11 SAFETY", FARMER Vs. BRENNAN, 511 U.S. 825 1.d. AT 837 (1994).   PLAINTIFF HAS MET THAT STANDARD. "PRISON OFFICIALS HAVE AN OBLIGATION

12 TO INTERVENE WHEN THEY KNOW A PRISONER SUFFERS FROM SELF-DESTRUCTIVE TENDENCIES", RICE EX EL RICE Vs. CORR. MED. 9ER., 675 F. 3d.

13 650,665 (7ᵀᴴ CIR. 2012).   "PRISONER'S MUST BE PROTECTED FROM SUICIDE AND SELF-INJURY", LEE Vs. DOWNS, 641 F. 2d 1117 (4ᵀᴴ CIR. 1981)

14

15 "TO SHOW STATE OF MIND, THE PLAINTIFF MUST PROVIDE EVIDENCE THAT THE DEFENDANT HAD ACTUAL KNOWLEDGE OF IMPENDING HARM, IT WAS

16 EASILY PREVENTABLE, AND YET FAILED TO TAKE THE STEPS THAT WOULD HAVE EASILY PREVENTED THAT HARM", ZINGG Vs. GROBLESKI, 907 F. 3d. 630

17 635 (19ᵀ CIR. 2018). OFFICER G. HERRERA TOLD PLAINTIFF "I DON'T CARE, KILL YOURSELF", DECL. D. PUCKETT, EX. B-003. M. CALAHAN CONTINUED

18 TO PIKE PLAINTIFFS DOOR DURING GUARD ONE SAFETY CHECKS AS PLAINTIFF WAS ACTIVELY    ATTEMPTING TO COMMIT SUICIDE WITH ALL HIS

19 WINDOWS COVERED WITH AN INSCRIPTION "I'm SUICIDAL" ON CARDBOARD. G. HERRERA AND M. CALAHAN DEPRIVED PLAINTIFF OF

20 CONSTITUTIONAL RIGHTS WITH A CULPABLE STATE OF MIND.   "PRISON OFFICIALS ARE DELIBERATELY INDIFFERENT WHEN THEY DENY, DELAY, OR

21 INTENTIONALLY INTERFERE WITH MEDICAL TREATMENT", HAMILTON Vs. ENDRELL, 981 F. 2d. 1062, 1066 (9ᵀᴴ CIR 1992).   "AN OFFICIAL ACTS

22 WITH DELIBERATE INDIFFERENCE IF HE HAD ACTUAL KNOWLEDGE OF THE PRISONER'S SERIOUS MEDICAL NEEDS AND THE RELATED RISK, BUT

23 NONETHELESS DISREGARDED THEM", SCINIO Vs. STANSBERRY, 841 F. 3d. 219., 225-226 (4ᵀᴴ CIR. 2016).

24                                        ARGUMENT II

25    G. HERRERA AND M. CALAHAN WERE ON NOTICE THAT THEIR INDIFFERENCE VIOLATED TRAINING, LAW, AND PLAINTIFF'S

26    CONSTITUTIONALLY PROTECTED CIVIL RIGHTS.

27

28 "COURTS MUST, WHEN POSSIBLE, INTERPRET EACH WORD OF A LAW, SO AS TO GIVE IT MEANING EFFECT", SILVEIRA Vs. LOCKER, 312 F. 3d. 1083

4

1  (9TH CIR. 2002). SINCE 2005 EACH (CDCR) EMPLOYEE IS ELECTRONICALLY SENT THE CODE OF CONDUCT AND EMPLOYEE DISCIPLINE MATRIX TO

2  ENSURE "NOTICE" AND CONSISTENCY STATEWIDE, CAL. PEN. COD. § 5D58.4 (a)(d)(1) THRU (4). "EACH INSTITUTION SHALL ENSURE ALL

3  EMPLOYEE(S) WHOSE ASSIGNMENT ROUTINELY INVOLVE INMATE CONTACT ARE TRAINED TO RECOGNIZE SYMPTOMS AND SIGNS ASSOCIATED

4  WITH SUICIDE RISK AND THE APPROPRIATE PROCEDURE FOR STAFF INTERVENTION", CAL. COD. OF REG. TIT. 15 § 3365 (a). "SHALL" MEANS

5  MANDATORY, CAL. COD. OF REG. TIT. 15 § 3000.5 (c). "EVERY (CDCR) EMPLOYEE(S) ANNUAL TRAINING CONSIST OF SUICIDE PREVENTION

6  TRAINING", [DOM] CH.3 ART. 18 § 32010.15. "EVERY EMPLOYEE REGARDLESS OF ASSIGNMENT IS RESPONSIBLE FOR THE SAFE CUSTODY OF

7  THE INMATE CONFINED IN THEIR INSTITUTION OF THE DEPARTMENT", CAL. COD. OF REG. TIT. 15 § 3271. "ALL EMPLOYEE(S) OF THE DEPARTMENT

8  'SHALL' BE RESPONSIBLE TO ENFORCE ALL LAWS, REGULATIONS, AND CDCR POLICIES", CAL. COD. OF REG. TIT. 15 § 3291 (a). "ENDANGERING INMATE(S)

9  BY VIOLATION OF DEPARTMENT TRAINING, LAWS, REGULATIONS IS GROUNDS FOR DISCIPLINE", [DOM] CH.3 ART. 22 § 33030.19 (D)(2). "ANY

10 (CDCR) EMPLOYEE WHO BECOMES AWARE OF AN INMATE(S) CURRENT SUICIDAL IDEATION, THREATS, GESTURES, SELF-INJURIOUS BEHAVIORS OR

11 SUICIDE ATTEMPTS SHALL IMMEDIATELY NOTIFY A MEMBER OF THE HEALTH CARE STAFF. THE INMATE SHALL BE PLACED UNDER DIRECT

12 OBSERVATION UNTIL A CLINICIAN TRAINED STAFF PERFORMS A SUICIDE RISK ASSESSMENT AND CONDUCTS A FACE-TO-FACE EVALUATION",

13 SUICIDE PREVENTION AND RESPONSE, MENTAL HEALTH SERVICE DELIVERY SYSTEM CHAPTER 10, SEC. (D), PAGE 12-10-7. "STATE REGULATIONS,

14 INCLUDING PRISON REGULATIONS, HAVE THE FORCE OF LAW", MADRID Vs. GOMES, 889 F. SUPP. 1146, 1127 F.n. 219 (N.D. CAL. 1995).

15

16 ON JANUARY 08, 2020 OFFICERS G. HERRERA AND M. CALAHAN DISREGARDED THE AFOREMENTIONED LEGAL AUTHORITY REGARDING

17 CONSTITUTIONALLY STANDARDS OF SUICIDE PREVENTION AND INTERVENTION PROCEDURES WHEN PLAINTIFF EXPRESSED AN EXPLICIT PLAN

18 AND INTENT TO COMMIT SUICIDE. G. HERRERA AND M. CALAHAN WERE ON NOTICE THAT THEIR CONDUCT VIOLATED TRAINING, SUICIDE

19 PREVENTION PROCEDURES, LAW, AND PLAINTIFF'S CONSTITUTIONALLY PROTECTED RIGHTS. "DELIBERATE INDIFFERENCE TO MENTAL HEALTH

20 (SUICIDE PREVENTION) PROCEDURES ARE ACTIONABLE UNDER THE EIGHTH AMENDMENT", CABRALES Vs. CITY OF LOS ANGELES, 864 F. 2d AT

21 1460-62. G. HERRERA AND M. CALAHAN DID NOT INTERVENE, AND DID NOT ADMINISTER AIDE, OR NOTIFIED CLINICAL TRAINED STAFF TO DO

22 A SUICIDE RISK ASSESSMENT, BUT INSTEAD, ENDORSED PLAINTIFFS SUICIDE PLAN AND ALLOWED PLAINTIFF TO CARRY IT OUT, THUS, WILLFULLY

23 DEPRIVING PLAINTIFF OF AVAILABLE MENTAL HEALTH SERVICES WITHIN THE LTRH UNIT AT CSP-SAC. "EIGHTH AMENDMENT DELIBERATE

24 INDIFFERENCE CLAIM STATED FOR PRISONS FAILURE TO TREAT MENTAL HEALTH NEEDS", WOODWARD Vs. CORR. MED. SERV. OF ILLINOIS, 368 F. 3d.

25 917 (7TH CIR. 2004).

26

27 "RIGHT TO EMERGENCY MEDICAL CARE IS WELL-ESTABLISHED AND A REASONABLE JURY COULD FIND THAT GUARDS WERE DELIBERATELY INDIFFERENT

28 WHEN THEY ALLOWED DETAINEE TO SCREAM, HOWL, AND BANG ON DOOR FOR OVER EIGHT HOURS WITHOUT SUMMONING MEDICAL

1  ATTENTION", RYAN Vs. ARMSTRONG, 850 F. 3d. 419 (8ᵀᴴ CIR. 2017).   "FAILURE TO RESPOND TO WARNING SIGNS THAT PRISONER WAS

2  SUICIDAL", CAVALIERI Vs. CHARD, 321 F. 3d. 616, 621- 22 (7ᵀᴴ CIR. 2003).   "PRISONERS ARE ENTITLED TO MEDICAL CARE PROVIDED BY THE

3  GOVERNMENT, AS A FUNDAMENTAL PRINCIPLE UNDER THE EIGHTH AMENDMENTS CRUEL AND UNUSUAL PUNISHMENT CLAUSE ",

4  ESTELLE Vs. GAMBLE, 429 97, S.CT. 285, 50 L. Ed. 2d  251 (1976).

5                            ARGUMENT III

6        BESIDES PLAINTIFFS PHYSICAL DAMAGES, PLAINTIFFS PSYCHOLOGICAL DAMAGES ARE ACTIONABLE

7

8  ASSUMING FOR THE SAKE OF ARGUMENT THAT THE DISTRICT COURT DOES NOT CONSTRUE CONTUSIONS, SEVERE ROPE BURNS, AND PERMANENT

9  SCARING AT THE CIRCUMFERENCE OF PLAINTIFFS NECK AS SERIOUS INJURY, THE COURT MUST CONSIDER THE TOTALITY OF THE CIRCUMSTANCES

10  LEADING UP TO PLAINTIFFS SUICIDE ATTEMPT, INCLUSSIVE OF PHYSICAL DAMAGES AND SUBSEQUENT EMOTIONAL AND PSYCHOLOGICAL

11  DAMAGES FROM THE TRAUMATIC EVENT.   "EIGHTH AMENDMENT DOES NOT REQUIRE SERIOUS INJURY TO SUPPORT A CONSTITUTIONAL CLAIM",

12  TIJERINA Vs. PLENTL, F. 2d. 148 (5ᵀᴴ CIR. 1993).   "PSYCHOLOGICAL PAIN CAN VIOLATE THE EIGHTH AMENDMENT", PERKINS Vs. KANSAS

13  DEPT. OF CORR., 165 F. 3d. 803 (10ᵀᴴ CIR. 1999).  "PSYCHOLOGICAL INJURIES CAN SERVE AS BASIS FOR SECTION 1983 LIABILITY",

14  TARVER Vs. CITY OF EDNA, 410 F. 3d. 745 (5ᵀᴴ CIR. 2005).   "PSYCHOLOGICAL INJURIES ARE ACTIONABLE UNDER SECTION 1983,"

15  MESA Vs. PREJEAN, 543 F. 3d. 264 (5ᵀᴴ CIR. 2008).  "DAMAGES FOR PAIN, SUFFERING, EMBARRASSMENT, AND HUMILIATION ARE

16  RECOVERABLE UNDER SECTION 1983 ACTION", SHAMAEIZADEH Vs. CUNIGAN, 338 F. 3d. 535 (6ᵀᴴ CIR. 2003).  "IN SOME CONTEXTS,

17  EMOTIONAL DAMAGES MAYBE RECOVERABLE UNDER SECTION 1983", MENDEZ-SOTO Vs. RODRIGUEZ, 448 F. 3d. 12 (1ˢᵗ CIR. 2006).

18  " AN ABSENCE OF TREATMENT IS EQUALLY ACTIONABLE WHETHER THE INMATE SUFFERING IS PHYSICAL OR PSYCHOLOGICAL", MICTCHELL Vs.

19  KALLAS, 895 F. 3d. 492, 499 (7ᵀᴴ CIR. 2018).  "COURTS MUST, WHEN POSSIBLE, INTERPRET EACH WORD OF A LAW, SO AS TO GIVE IT MEANINGFUL

20  EFFECT", SILVIERA Vs. LOCKER, 312 F. 3d. 1083 (9ᵀᴴ CIR. 2002).

21  THE CONSTITUTIONAL VIOLATIONS BY OFFICERS G. HERRERA AND M. CALAHAN TRANSEND PHYSICAL DAMAGES AND INCLUDE PSYCHOLOGICAL

22  DAMAGES e.g., SUFFERING, EMBARRASSMENT, SHAME, HUMILIATION, PTSD, ETC...THUS, ARE LIABLE FOR UNCONSTITUTIONAL CONDUCT.

23                            PRAYER FOR RELIEF

24

25        GRANTING PLAINTIFFS DECLARATION THAT THE ACTS HEREIN VIOLATED HIS RIGHTS UNDER THE U.S. CONSTITUTION,

26

27        GRANTING PLAINTIFF COMPENSATORY DAMAGES IN THE AMOUNT OF (1) MILLION DOLLARS AGAINST EACH DEFENDANT,

28  JOINTLY AND SEVERALLY,

1    PLAINTIFF SEEKS PUNITIVE DAMAGES IN THE AMOUNT OF (1) MILLION DOLLARS AGAINST EACH DEFENDANT, JOINTLY AND SEVERALLY,

2

3    PLAINTIFF SEEKS RECOVERY OF COST IN THIS SUIT, AND ANY ADDITIONAL RELIEF THIS COURT DEEMS, JUST, PROPER, AND EQUITABLE,

4

5    PLAINTIFF SEEKS APPOINTMENT OF COUNSEL TO DEFEND HIS CIVIL RIGHTS.

6

7                                        VERIFICATION

8    I HAVE READ THE FOREGOING COMPLAINT AND HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO

9    THE BEST OF MY KNOWLEDGE. IF CALLED UPON TO DO SO, I CAN COMPETENTLY TESTIFY TO THESE MATTERS. THIS DECLARATION WAS

10   EXECUTED ON THE 20TH DAY OF NOVEMBER AT STOCKTON CALIFORNIA.

11

12   _Nickolaus D. Flores_
                SIGNATURE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          7

# EXHIBIT COVER PAGE

| |
|---|
| A |

EXHIBIT

Description of this Exhibit: SECOND LEVEL RESPONSE LOG # SAC-B-20-00169

Number of pages to this Exhibit: ___2___ pages.

JURISDICTION: (Check only one)

- [ ] Municipal Court
- [ ] Superior Court
- [ ] Appellate Court
- [ ] State Supreme Court
- [x] United States District Court
- [ ] State Circuit Court
- [ ] United States Supreme Court
- [ ] Grand Jury

Template Date 4/4/2012
State of California

Attachment E-1
Department of Corrections and Rehabilitation

# Memorandum

Date  :  February 25, 2020

To  :  FLORES, AV2008
Facility: B  Building: 8  Cell: 217L
California State Prison Sacramento

Subject:  **STAFF COMPLAINT RESPONSE-APPEAL #SAC-B-20-00169 SECOND LEVEL RESPONSE**

**APPEAL ISSUE:** You allege on January 8, 2020, you expressed to Correctional Officer G. Herrera you were having thoughts of committing suicide. You even went as far as to inform Officer Herrera of the specific plan you had to commit suicide and you intended to act on the plan immediately. Officer Herrera responding by stating, "Stop telling me and kill yourself, I don't care." Officer Herrera walked away from your door, violating suicide intervention and precaution policy. You then state you utilized cardboard and covered all your windows. On one of the pieces of cardboard you wrote, "I'm suicidal" in bold letters. You state Officer M. Calahan conducted a Guard One Security/Welfare Check without obtaining a view into your cell. Officer Calahan disregarded the note on the window stating you were suicidal without initiating any suicide intervention procedures.

All issues unrelated to the allegation of staff misconduct must be appealed separately and will not be addressed in this response. You do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint. If you are unable to name all involved staff you may request assistance in establishing their identity.

**DETERMINATION OF ISSUE:** A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review your appeal is being processed as an Appeal Inquiry.

You were interviewed on February 5, 2020, by Lieutenant T. S. Buchanan, wherein you reiterated the information contained in the appeal with nothing new to add.

**Your appeal is PARTIALLY GRANTED in that:**

The **Appeal inquiry** is complete, has been reviewed and all issues were adequately addressed.

The following witnesses were questioned: Puckett, G05549, FA01-129L

Staff: ***did*** ☒ ***did not*** ☐ violate CDCR policy with respect to one or more of the issues appealed.

Appeal Log No:  SAC-B-20-00169          EXHIBIT A-D01

**Page 2**

ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE.

- As such, the details of any inquiry will not be shared with staff, members of the public, or offender appellants.
- Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. A variety of personnel actions may be initiated by the Department based upon the content of your complaint and the outcome of any investigation or inquiry conducted as a result of your complaint.
- Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.

If you wish to appeal the decision and/or exhaust administrative remedies, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's/Third Level of Review. Once a decision has been rendered at the Third Level, administrative remedies will be considered exhausted.

Print: <u>T. S. Buchanan, Lieutenant</u>    Sign: _____    Date: _2-27-20_
Interviewer

Print: <u>JEFF LYNCH, Warden (A)</u>    Sign: _____    Date: _2/28/2020_
Reviewing Authority

EXHIBIT A-002

Appeal Log No: SAC-B-20-00169

# EXHIBIT COVER PAGE

"B"

EXHIBIT

Description of this Exhibit: DECLARATION DURRELL PUCKETT, # G-05549

Number of pages to this Exhibit: _____ 1 _____ pages.

JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☑ United States District Court
☐ State Circuit Court
☐ United States Supreme Court
☐ Grand Jury

Declaration of Durrell Puckett cdc#G.05549

I, DURRELL ANTHONY PUCKETT DECLARE AS FOLLOWS

I HEARD I/m Flores TELL C/o HUERRA TWICE HE WAS

SUICIDAL AND FELT LIKE HANGING HIMSELF AND HUERRA

SAID SOMETHING LIKE "I DONT CARE KILL YOURSELF" OR WORDS TO THAT

EFFECT.

I, DURRELL ANTHONY PUCKETT DECLARE UNDER PENALTY OF PERJURY

THAT THE FOREGOING IS TRUE AND CORRECT on 1/8/2020 IN

Repress Cali, x Dell Cef p/ett

EXHIBIT B- 003

# EXHIBIT COVER PAGE

"C"

EXHIBIT

Description of this Exhibit: RAMPANT CORRUPTION AT CSP-SAC

PRISON LEGAL NEWS, VOL. 33 No. 2, ISSN 1075-7678

FEBRUARY 2022

Number of pages to this Exhibit: ___2___ pages.

JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☑ United States District Court
☐ State Circuit Court
☐ United States Supreme Court
☐ Grand Jury

# Investigations Into the Deaths of Several Prisoners and Two Guards Reveal Rampant Corruption, Cover-ups in California Prison

*by Keith Sanders*

**W**HEN BRANT DANIEL FOUND HIMSELF in one of California's most violent and corrupt prisons, the California State Prison (CSP) in Sacramento, known as New Folsom, he knew he was in trouble. Daniel, a member of the Aryan Brotherhood prison gang, potentially faces the death penalty for the October 2016 murder of fellow prisoner Zachary Scott at the Salinas Valley State prison, so he is no stranger to trouble or violence. But Daniel's attorneys, John Balazs and Timothy Warriner, are asking a federal court to move him to a different prison for his protection. From whom? Guards employed by the California Department of Corrections and Rehabilitation (CDCR), who have allegedly harassed him and even planted a knife in his cell.

In filings entered on December 28, 2021, the lawyers also claim that two guards wrote replies to notes from Daniel, admitting they could hear his privileged phone conversations with counsel. It is the latest attempt in a year to move Daniel out of CSP-Sacramento since their January 2021 court filings claiming that "rogue" guards "have planted weapons and drugs in inmates' cells in order to obtain more overtime, have spread false rumors and relayed confidential information from inmates' files to other inmates in violation of CDCR policy, and on at least two occasions have been directly involved in the killing of a CSP-Sacramento inmate."

With a staff of 2,500, CSP-Sacramento houses almost 2,200 prisoners. A security-level 4 facility, the highest in the California prison classification system, it is home to the state's most violent and dangerous prisoners, as well as patients so mentally ill that they are too dangerous to be housed in mental hospitals.

Daniel is one of several Aryan Brotherhood members locked up at the prison facing charges stemming from a June 2019 racketeering indictment against the group. But prisoner assaults on guards are also rampant, where prison staff allegedly face "gassing"—when prisoners throw feces and urine on them—almost daily.

As an anonymous guard told the *Sacramento Bee*, "[Y]ou have to be hard. You have to know when to flip that switch and get crazy. Because if you don't fight that crazy individual with a crazy mentality, you're going to lose."

Yet much of that "crazy mentality" at New Folsom by guards is also corrupt and illegal.

In their court filing, Daniel's attorneys also revealed that a New Folsom guard provided much of the information for their suit. That was Sergeant Kevin Steele, who began his career as a prison guard in 2001 at San Quentin State Prison. In 2008, he was promoted to sergeant and transferred to New Folsom where he eventually joined the Investigative Services Unit (ISU) in 2015.

As a member of ISU, a detective unit inside the prison, the 56-year-old sergeant acted as the unit's criminal prosecution coordinator and facilitated investigations involving outside agencies like the FBI, local law enforcement, and the Sacramento County District Attorney's office. Steele also trained in-coming guards on how to collect evidence and conduct investigations.

As an investigator, Steele had expertise and knowledge about prisoner investigations. And what he saw in the course of his work caused him concern, sufficiently so to write several memos to CSP-Sacramento Warden Jeffery Lynch and the state corrections secretary detailing how other ISU member were falsifying documents, planting evidence on prisoners, and even conspiring to murder prisoners. Guards who spoke anonymously with the *Sacramento Bee* described Steele as a "meticulous professional."

In one memo, Steele wrote that at "every single juncture where I discovered something that resembled corruption, wrongdoing, exploitation, fraudulency and/or breeches of trust, I ALWAYS alerted supervisory staff and institutional leadership, as that is what I thought was the desire of both the administrative staff and [CDCR]," and adding "it would appear that is NOT the desire of either entity."

Tragically, Steele committed suicide on August 20, 2021. Why? Once other guards and members of ISU discovered that one of their own was a "snitch," they harassed Steele mercilessly, and even mistreated and threatened him. Eventually, Steele was forced to take a leave of absence in February 2021 and, amazingly, on February 12, 2021, he was barred from returning to the prison.

CDCR's press secretary, Dana Simas, refuted Steele's claims of harassment and noted in an email that the investigator was "banned due to a misconduct investigation," though she declined to clarify the nature of the misconduct, adding only that it was not the "result of whistleblower retaliation."

Yet Steele was the second ISU whistleblower to die after being mistreated and harassed. In 2020, guard Valentino Rodriguez, 30, was found dead of an accidental fentanyl overdose at his home. Relatives and friends reported that he was "throwing up all the time at work and hyperventilating" because he was suffering from PTSD and depression. He gained 45 pounds and began seeing a therapist. Rodriguez took a leave of absence on January 28, 2020, and died soon after.

The relatives of Rodriguez filed a complaint with the Office of Internal Affairs alleging racial and anti-gay slurs from his fellow guards had contributed to Rodriguez's decline in mental health. After an initial investigation, an internal affairs officer concluded that a "reasonable belief was established to allege serious misconduct occurred." Ten guards were disciplined for Rodriguez's hazing and mistreatment, and CDCR moved on December 28, 2021, to fire two more. None was identified.

The corrupt and abusive culture inside New Folsom reflects a larger trend for the health of prison guards. In 2017, a study by the University of California, Berkeley, found that guards are "exposed to violence at rates comparable to military veterans, and that the job is linked to health problems, depression and suicidal thoughts." According to the California Correctional Peace Officers Association, nine guards committed suicide in 2020.

Yet the mental health of guards should not detract from the misconduct they direct

EXHIBIT C-004

toward prisoners at New Folsom. Steele was threatened primarily because he blew the whistle on corrupt guards and cover-ups involving two prisoner deaths where guards played a role.

Attorneys for one of the dead men, Luis Giovanny Aguilar, 29, claim in a civil rights lawsuit that prison guards "via their willful indifference to prevent and their actual facilitation of the murder of Mr. Aguilar conspired to cause" the prisoner's death in December 2019.

Three other prisoners, Dion Green, Anthony Rodriguez and Cody Taylor, were restrained with metal cuffs in chairs along with Aguilar. Video of the incident shows that after Taylor and Rodriguez slipped free from their restraints they went to the second floor to grab a weapon. When they returned, they attacked Aguilar, who remained cuffed to his chair.

Ultimately, Taylor pleaded no contest and was sentenced in May 2021 to 100 years to life, plus two years. Charges were still pending against Rodriguez and Green on December 10, 2021, when Aguilar's mother filed a federal lawsuit alleging that video evidence showed guards let the prisoners who killed him make a "practice run" a week before the murder. Although CDCR insists that no staff was involved with Aguilar's murder, the incident took place in full view of guards on the first floor.

Steele had also provided information to an attorney for 29-year-old Milton Beverly, who was found dead in his cell in 2016. Disputing prison staff's claim that Beverly had hanged himself alone in his cell, Steele told the lawyer, Steven Glickman, that another prisoner had confessed, both in writing and on video, to killing Beverly in a fight over the telephone. Yet when Glickman reviewed the documents relating to his client's alleged suicide the "confessions were missing," he noted. Steele notified Warden Lynch of the missing documents and indicated to Glickman that he would publicly testify to their existence, but his subsequent suicide prevented that from happening.

In November 2020, guards Ashley Marie Aurich, 32, and Arturo Pacheco, 38, were indicted after the death of an unnamed 65-year-old prisoner in 2016. Aurich was charged with Falsification of Records in a Federal Investigation (18 U.S.C. §1519) and pleaded guilty in January 2021. Pacheco's indictment listed two counts under the same charge and two more counts of Deprivation of Rights Under Color of Law (18 U.S.C. §242), for which he is still awaiting trial.

The charges stemmed from an incident in which Aurich, Pacheco, and at least three other guards were escorting a handcuffed prisoner from one cell to another. According to Pacheco's indictment, he released his grip on the prisoner's arm during the escort and then wrapped his arms around the prisoner's legs, causing him to land face first on the floor. The prisoner was taken to the hospital where he died two days later. The indictment accused Pacheco that Pacheco falsely stated he used "immediate force" because he was trying to stop the prisoner "from self-harming himself and causing serious bodily injury or death to himself."

As for Aurich, her indictment alleged she "knowingly and falsely stated that the only witnesses to the assault...were Correctional Officer 1, Correctional Officer 3, and Correctional Officer 4, intentionally concealing the presence of Correctional Officer 2," which was Pacheco.

To date, the corruption and mistreatment of both staff and prisoners at New Folsom continue unabated. Officials are quick to insulate many of the guards from administrative or legal consequences for their actions by claiming no wrongdoing or putting the blame on prisoners. Moreover, promises of investigating misconduct by guards are minimized by having investigations performed by ISU, the very same unit that saw two of its members hazed, threatened and harassed to the point of death for uncovering the misconduct of others in the unit. This is nothing new and has been the norm in CDCR for at least a half century if not longer. ▟

Sources: *AP News, Sacramento Bee*

EXHIBIT C-005

# PROOF OF SERVICE BY MAIL
# [CCP §§ 1013(a), 2015.5]

STATE OF CALIFORNIA, COUNTY OF  SAN JOAQUIN

I am a citizen of the County of  SAN JOAQUIN , State of California. I am a citizen of the United States of America. I am over the age of eighteen (18) and not a party to this action. I am a resident of the County of San Joaquin, CDCR# AV-2008 .

My address is: NICHOLAS D. FLORES # AV-2008

California Health Care Facility

P.O. BOX 32110

Stockton, CA 95213

On NOVEMBER    20 , 2022, I served via United States Mail a copy of the following document(s): COMPLAINT

The above-noted legal document(s) was placed in a sealed envelope, with postage thereon fully prepaid, addressed to the person at the address indicated below pursuant to California Code of Civil Procedure Section 1013. I placed the envelope or package in a mailbox or other like facility addressed to:

U.S. DISTRICT COURT                    OFFICE OF ATTORNEY GENERAL
501 I STREET ℅ 4-200                    455 GOLDEN GATE AVE, SUITE # 11000
SACRAMENTO, CAL. 95814                  SAN FRANCISCO, CALIFORNIA 94102

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. This document was executed on NOVEMBER 20 , 2022 in San Joaquin County, California.

NICHOLAS FLORES                          Nicholas D. Flores
Type or Print Name                       Signature